**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

MISTY MARIE HALL,                              Case No. 1:17-cv-363

         Plaintiff,                                   Black, J.
                                                        Bowman, M.J.
   v.

COMMISSIONER OF SOCIAL SECURITY,

         Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff Misty Marie Hall filed this Social Security appeal in order to challenge the Defendant's finding that she is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents two claims of error for this Court's review. As explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED, because it is supported by substantial evidence in the record as a whole.

**I. Summary of Administrative Record**

In September 2013, Plaintiff filed an application for Supplemental Security Income ("SSI"), alleging disability beginning on June 15, 2002, based upon a combination of a back impairment and mental impairments. After her claim was denied initially and upon reconsideration, Plaintiff requested an evidentiary hearing before an Administrative Law Judge ("ALJ").

On March 10, 2016, Plaintiff appeared with counsel at a hearing conducted via videoconference before ALJ Andrew G. Sloss; a vocational expert also testified. (Tr. 33-48). At 36, Plaintiff was considered a younger individual on the date her application was

1

filed and remained in that age category as of the date of the ALJ's decision.  She has a limited tenth grade education and no past relevant work; she takes care of a young son.[1]

On March 21, 2016, the ALJ issued an adverse written decision, concluding that Plaintiff is not disabled. (Tr. 16-27). The ALJ determined that Plaintiff has severe impairments of scoliosis and depression, and a non-severe impairment of an alleged learning disability. (Tr. 18).  The ALJ found that none of her impairments, either alone or in combination, met or medically equaled any Listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, such that Plaintiff would be entitled to a presumption of disability.  (*Id.*) Instead, the ALJ found that Plaintiff retains the residual functional capacity ("RFC") to perform a restricted range of light work, subject to the following limitations:

> [S]he could frequently climb ramps or stairs; and is limited to simple, routine tasks, in work that has only occasional changes in the work setting, and that involves only occasional interaction with the general public, coworkers, and supervisors.

(Tr. 20).  Considering Plaintiff's age, education, and RFC, and based on testimony from the vocational expert, the ALJ determined that Plaintiff could still perform a "significant number" of jobs in the national economy, including the representative jobs of cleaner, laundry worker, and inspector.  (Tr. 27).  Therefore, the ALJ determined that Plaintiff was not under a disability.  The Appeals Council denied further review, leaving the ALJ's decision as the final decision of the Commissioner.

In her appeal to this Court, Plaintiff argues that the ALJ erred: (1) by inconsistently affording both "great weight" and "partial weight" to the same mental RFC opinions; and

---

[1] Elsewhere in the record, it is apparent that the son was born in 2013.  At the hearing, Plaintiff did not state her son's age but testified that, because he weighed approximately 40 pounds at that time, she had difficulty lifting him.

2

(2) by failing to adequately account for "moderate" mental limitations in assessing Plaintiff's RFC.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job. 42 U.S.C. § 423(d)(1)(A).

### B. Plaintiff's Claims

#### 1. The ALJ's Evaluation of Dr. Berg's Opinions

Plaintiff's first claim is that the ALJ erred by inconsistently evaluating the opinions of examining consultant, Norman L. Berg., Ph.D., giving "great weight" to his opinions at Step 3 of the sequential process, but only "partial weight" at Steps 4 and 5.

Dr. Berg examined Plaintiff on October 30, 2013. (Tr. 751). During that exam, Plaintiff reported she is divorced but lives with a boyfriend, a surviving infant son, her

4

sister and her brother-in-law. She also reported that she has joint custody with her ex-husband of her 15-year-old daughter. (Tr. 451-452). Dr. Berg diagnosed Plaintiff with mood disorder, NOS, depression, anxiety, a report of mood swings, and bereavement from the death of an infant twin son four months earlier. He assessed a GAF score of 50. (Tr. 756). Dr. Berg opined that Plaintiff was capable of understanding, remembering, and carrying out verbal instructions as long as they were commensurate with her level of intelligence, which he estimated being between the borderline and low average range. (Tr. 758). He noted that "at times" during the evaluation, Plaintiff's ability to maintain attention and concentration appeared to be "slightly impaired," which he attributed to her depression. However, he also noted that she "usually was fairly persistent," despite functioning at an "average to below average to slow pace." (*Id.*) He opined that she was capable of performing simple tasks as well as 2-3 step tasks. He further opined that she would have difficulty responding appropriately to supervisors and coworkers and "much difficulty at this time coping with routine work pressures" due to the degree of her depression following the still-recent death of her infant. (*Id.*)

At Step 3 of the sequential evaluation, the ALJ considered what are commonly termed the "Paragraph B" criteria, in order to determine whether the Plaintiff's mental impairment met or medically equaled the criteria of Listing 12.04. In order to satisfy Listing Level severity for a mental impairment, a claimant must demonstrate at least two "marked" restrictions among the Paragraph B functional areas, or at least one marked restriction plus repeated episodes of decompensation, each of extended duration. In his Step 3 analysis, the ALJ reviewed the relevant criteria but gave "great weight" to the opinions of multiple consulting psychiatrists, including Dr. Berg, that Plaintiff has only moderate restrictions in each of the relevant areas, with no "severe" restrictions, and no

5

episodes of decompensation of extended duration. Therefore, the ALJ found that Plaintiff did not suffer from a Listing level mental impairment. (Tr. 19).

Moving on to Steps 4 and 5 of the sequential analysis, the ALJ appropriately explained that the limitations identified at Step 3, in assessing the "Paragraph B" criteria, differ from a residual functional capacity assessment and only are used to rate the severity of mental impairments. (Tr. 20). By contrast, at Steps 4 and 5, the ALJ was required to provide a more detailed assessment of Plaintiff's work-related functional limitations. In the course of that more detailed assessment, the ALJ first explained that he was giving "little weight" to Dr. Berg's GAF score of 50, as "not proportionate with the recitation of the claimant's activities and social functioning" and as "internally inconsistent with Dr. Berg's other opinions," which indicated only "moderate" restrictions. (Tr. 23). The ALJ further noted that a psychiatric examination on October 11, 2013 also revealed normal affect, normal judgment, and normal mood. (*Id.*)

Despite discounting the GAF score, the ALJ still gave Dr. Berg's opinions "partial weight" in determining Plaintiff's mental RFC. (*Id.*) Later in his opinion, the ALJ discussed the opinions offered by both Dr. Berg as well as those offered by two other consultants in November 2013 and March 2014, and reiterated that he gave all three psychiatric opinions "partial weight to the extent they are consistent with" the mental RFC as determined," including the conclusion that "the claimant suffers moderate restriction of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence or pace." (Tr. 25).

In explaining the basis for specific work-related mental limitations, and despite stating that he was giving only "partial weight" to Dr. Berg's opinions, the ALJ's RFC analysis drew heavily from Dr. Berg's opinions:

6

> The claimant's depression, which results in moderate restriction of activities of daily living, has been accommodated for by limiting the claimant to simple, routine tasks, in work that has only occasional changes in the work setting. This limitation also accommodates Dr. Berg's opinion, "Claimant's present degree of depression, her relatively slow cognitive functioning, and some difficulty she has with concentration would result in claimant having much difficulty at this time coping with routine work pressures." (8F/8).
>
> The claimant's depression, which results in moderate difficulties in maintaining social functioning, has been accommodated for by limiting the claimant to work that has only occasional changes in the work setting and that involves only occasional interaction with the general public, coworkers, and supervisors. This limitation also accommodates Dr. Berg's opinion, "[C]laimant would have difficulty responding appropriately to supervisors and to coworkers." (8F/8).
>
> The claimant's depression, which results in moderate difficulties in maintaining concentration, persistence, or pace, has been accommodated for by limiting the claimant to simple, routine tasks, in work that has only occasional changes in the work setting. This limitation also accommodates Dr. Berg's opinion, "In our evaluation, claimant was able to understand, remember, and carry out verbal instructions, and claimant presently appears capable of adequately performing such functions as long as the material was commensurate with her estimated level of intelligence." "She appears capable of performing simple tasks and appears capable of performing 2-3 step tasks." (8F/8).

(Tr. 25-26).

Plaintiff argues that the ALJ's decision to give "great weight" to Dr. Berg's opinions at Step 3 of the sequential analysis to determine that her mental impairment did not meet or equal any Listing was internally inconsistent with the ALJ's decision to give only "partial weight" to the same opinions in assessing her mental RFC. However, I find no reversible error. First, because the inquiry at Step 3 is a limited one that is separate and distinct from the later sequential assessment of Plaintiff's mental residual functional capacity, the ALJ's decision to give the same opinions differing amounts of weight is not necessarily inconsistent. Second, even if the ALJ's reference to giving the same opinions both "great weight" at Step 3 and only "partial weight" at Steps 4 and 5 is found to be internally inconsistent, the ALJ's analysis makes clear that as a practical matter, any inconsistency

7

was minimal and any error was harmless. Read as a whole, the ALJ's decision provides sufficiently clear and logical consideration of Plaintiff's functional limitations and a mental RFC that clearly considered and incorporated Dr. Berg's opinions.

**2. The ALJ Fully Accounted for Plaintiff's Moderate Limitations**

In her second claim of error, Plaintiff argues that the ALJ's mental RFC finding was insufficient to account for her moderate deficiencies in concentration, persistence or pace. Specifically, Plaintiff argues that limiting her to "simple, routine tasks, in work that has only occasional changes in the work setting, and that involves only occasional interaction with the general public, coworkers, and supervisors" does not sufficiently account for Dr. Berg's opinion that Plaintiff would experience "much difficulty at this time coping with routine work pressures" based upon her "present degree of depression, her relatively slow cognitive functioning, and some difficulty with concentration." (Tr. 758). Plaintiff also complains that the hypothetical question provided to the vocational expert failed to account for the opinions of two state agency psychologists, who opined that Plaintiff could not perform under strict production quotas and would do best in a static setting. (Tr. 60, 75).

Again, I find no error. With respect to the opinions of the two agency consultants, the ALJ gave their opinions only "partial weight," (Tr. 25). An ALJ is not required to include restrictions in the RFC that the ALJ did not accept. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993). Both the two referenced consultants and Dr. Berg assessed Plaintiff with only moderate levels of impairment. The ALJ was not required to include a limitation on strict production quotas.

In support of her contention that the ALJ should have assessed greater limitations based upon Dr. Berg's opinions, Plaintiff cites *Edwards v. Barnhart*, 383 F.Supp.2d 920,

8

930-31 (E.D. Mach 2005) and *Ealy v. Commissioner*, 594 F.3d 503, 515-517 (6th Cir. 2010). In *Edwards*, an older and non-binding Michigan district court decision, the court called it a "close" decision on whether to remand where an ALJ limited Plaintiff to "simple, routine, unskilled work" after finding "moderate" limitations in concentration, persistence or pace. The Michigan court remanded, explaining:

> The current hypothetical question is not adequate on the issue of moderate limitations of concentration, persistence and pace for this Court to have any idea as to the number of the assembly, packing, and sorting or security guard jobs identified by the VE that would be excluded if quotas or other aspects related to moderate concentration limitations were added to the hypothetical question. Each of these jobs seems to require a degree of sustained concentration, persistence and pace.

*Edwards v. Barnhart*, 383 F. Supp.2d at 930-31. In contrast, the representative jobs of cleaner, laundry worker, and inspector identified by the vocational expert in this case do not appear equivalent to the assembly, packing and sorting jobs that more clearly evoked fast-paced factory work in *Edwards*. Also, unlike *Edwards*, the ALJ here included additional restrictions beyond limiting Plaintiff to "simple, routine" work, and also limited Plaintiff to only "occasional changes" in the workplace and "occasional interaction" with the public, co-workers and supervisors. Aside from the *Edwards* court itself characterizing its fact pattern as presenting a "close" issue, this Court has found *Edwards* to be distinguishable and not persuasive on facts that are more closely aligned with those presented in this case. *Accord Lauderdale v. Berryhill*, 2017 WL 1190544 (S.D. Ohio March 31, 2017).

In addition to *Edwards*, Plaintiff relies on *Ealy*, a Sixth Circuit decision that is binding on this Court, in which the appellate court held that a "streamlined" hypothetical did not adequately account for a plaintiff's specific mental limitations in concentration, persistence and pace. However, in *Ealy*, medical sources had offered very specific pace

9

and concentration limitations, stating that the plaintiff could "1) understand and remember simple instructions, 2) sustain attention to complete simple repetitive tasks for two-hour segments over an eight-hour day where speed was not critical, 3) tolerate coworkers and supervisors in a non-public setting, and 4) adapt to routine changes in a simple work setting." *Ealy,* 594 F.3d at 509. As this Court has previously observed, *Ealy* "'does not stand for the proposition that a finding that a claimant is limited to 'simple work' is somehow legally deficient.'" *Dickerson v. Com'r of Soc. Sec.*, 2017 WL 4020521, at *20 (S.D. Ohio Sept.13, 2017) (quoting *Goodrich v. Com'r*, 2017 WL 1130023 at *4 (W.D. Mich. Mar. 27, 2017)). In fact, many post-*Ealy* decisions have confirmed that in cases that do not include such specific hourly restrictions, a limitation to simple, repetitive tasks is sufficient to accommodate a moderate impairment in concentration, persistence, and pace. *See, e.g., Smith-Johnson v. Com'r of Soc. Sec.*, 579 Fed. Appx. 426 (6th Cir. 2014); *Hicks v. Com'r*, Case No. 1:13-cv-425-SJD, 2014 WL 4748356 at *6 (R&R adopted Sept. 23, 2014); *Clayton v. Astrue*, 2013 WL 427407 at *7 (S.D. Ohio Feb. 1, 2013) (collecting cases); *Steed v. Astrue,* 2012 WL 1097003, at *9 (N.D. Ohio Mar. 30, 2012). As one court explained:

> *Ealy* does not require further limitations in addition to limiting a claimant to "simple, repetitive tasks" for every individual found to have moderate difficulties in concentration, persistence, or pace…. Instead, *Ealy* stands for a limited, fact-based, ruling in which the claimant's particular moderate limitations required additional speed- and pace-based restrictions.

*Jackson v. Com'r of Soc. Sec.*, 2011 WL 4943966, at *4 (N.D. Ohio 2011).

Unlike in *Ealy*, on the record presented neither Dr. Berg nor the ALJ found that Plaintiff had any particular hourly speed and pace limitations. Based upon the record as a whole, the undersigned concludes that substantial evidence supports the mental RFC as determined.

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be **AFFIRMED** as supported by substantial evidence, and that this case be **CLOSED.**

                                                                                     */s Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

MISTY MARIE HALL,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 1:17-cv-363

Black, J.
Bowman, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).